**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>ARTI Cabinets, LLC,<br><br>Debtor. | Case No. 26-05222-hb<br><br>Chapter 11<br>Subchapter V |

# DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARIES, AND INSURANCE

ARTI Cabinets, LLC ("Debtor"), the above-captioned debtor and debtor-in-possession hereby moves for entry of interim and final orders, under sections 105(a), 363(b)(1), 507(a)(4), of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing payment of certain pre-petition employee wages, salaries, employee expenses, insurance premiums and payment of related taxes and withholdings, (collectively, and as further described below, the "Pre-Petition Employee Obligations authorizing financial institutions to honor all checks presented for payment related to the foregoing (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334(b)(2)(A). The Debtor confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(c), 507(a), 541, 1107(a), and 1108 and Bankruptcy Rules 6003 and 6004.

## PROCEDURAL HISTORY

4. On November 6, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under pursuant to subchapter v of chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107, 1108, 1182, and 1184 of the Bankruptcy Code.

5. The Debtor sources and sells cabinetry from its two show rooms in Greenville, South Carolina and Pickens, South Carolina. The Debtor's primary operations are from its warehouse in Taylors, South Carolina.

## RELIEF REQUESTED

6. The Debtor seeks entry of an order authorizing it, in its discretion, to pay, continue or otherwise honor all Pre-Petition Employee Obligations to or for the benefit of all current and former Employees, including, but not limited to, compensation in the ordinary course of business, paid time off, payroll taxes, reimbursable expenses, and all administrative and third-party costs associated with the foregoing.

## I. THE EMPLOYEE WAGE AND BENEFIT OBLIGATIONS

### A. Debtor's Employees

7. As of the petition date, the Debtor has 38 employees, including its single member Scott Wienert (collectively, the "Employees") working in its show rooms and warehouse. Employees are compensated on a mixture of W-2 and 1099 structures depending on the employee's role within the company.

8. The Debtor's design team also earn commissions based upon their sales. The commissions are settled weekly.

9. The Employees perform a variety of critical functions and are essential to the Debtor's ongoing operations and ability to preserve the going concern value of the Debtor's business.

**B. <u>Employee Compensation</u>**

10. In the ordinary course of business, all Employees are paid weekly (the "Payroll Period") and the weekly Payroll Period covers wages and commissions owed for a one-week period beginning on a Friday and ending on a Thursday. Employees receive their payment on the Friday after the Payroll Period ends. The last Payroll Period for which employees were paid in the ordinary course of business ended on October 29, 2026, and that payroll was remitted to the Debtor's payroll provider on November 6, 2026 for disbursement to Employees on November 5, 2026. Also, *pre-petition*, the Employees have accrued wages for time worked from October 30, 2026 to November 5, 2026. The accrued, but unpaid, wages and commissions are scheduled to be paid as a part of the regular November 13, 2026 payroll.

11. The Debtor projects that it will need to pay approximately $29,850 in gross payroll on November 13, 2026, which will need to be paid to the Debtor's payroll processor, ADP, on or before noon on November 12, 2026 to maintain the ordinary course of business.

12. Three Insiders who work regularly within the company receive compensation directly from the Debtor, including Scott Wienert the Debtor's single member.

13. The Debtor believes that it is current, as of the Petition Date, on all employee wages that have been earned by the Employees.

**C. <u>Time Off Benefits, Including PTO</u>**

14. The Debtor offers several paid ("<u>PTO</u>") and unpaid time-off benefits for all Employees, including vacation time, sick leave, holidays, and other paid leave (collectively, "<u>Time Off Policies</u>").

15. PTO that has not been used by the end of the year carries over from year to year and cannot be exchanged for pay. Any unused PTO is forfeited upon termination or resignation.

16. The Debtor seeks authority to honor its obligations for PTO and other time off policies in the ordinary course of business but ***not*** to pay any amounts on account of unused PTO and time off policies, except as may be mandated under state law.

**D. Deductions, Withholdings, Payroll Taxes, and Worker Compensation Insurance**

17. Federal and state law requires the Debtor to withhold amounts related to federal, state and local income taxes, employee to retirement accounts[1], Social Security, and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts"). These deductions from Employees' payroll are included in the gross wages detailed herein.

18. To the extent any of the Deductions or Payroll Taxes may not have been forwarded to the appropriate third-party recipients, the Debtor seeks authority to pay or transfer pre-petition Payroll Taxes (and to continue to forward Payroll Taxes on a post-petition basis whether or not related to the pre-petition period) to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

19. The Debtor maintains workers' compensation insurance for its Employees and the Debtor provides such coverage through an insurance policy (the "Workers' Compensation Insurance"). The Debtor seeks authority to continue to administer its Workers' Compensation Insurance.

[1] The Debtor does not have a retirement account program, but employees can contribute to retirement accounts that are managed by the Debtor's payroll processor.

### E. Honoring Pre-Petition Checks and Payments

1. Before the Petition Date, the Debtor paid certain of its Pre-Petition Employee Obligations with checks that may not have been presented for payment as of the Petition Date. To ensure the orderly payment of the Pre-Petition Employee Obligations, the Debtor requests that the Court enter an order requiring the Debtor's banks to honor any such checks which are drawn on the Debtor's accounts, and authorizing the banks to rely on the representations of the Debtor as to which checks are subject to this Motion. To the extent any such checks nevertheless are dishonored, the Debtor additionally requests authority to issue replacement checks and to reimburse its Employees for any damages resulting therefrom.

## II. NEED FOR RELIEF

2. It is essential that the Debtor be permitted (to the extent funds are available, but not obligated) to pay the Employee Obligations to, or on behalf of, all Employees as set forth above. It is equally as important to provide the benefits described above to the Employees in the ordinary course of business.

## III. APPLICABLE AUTHORITY

3. This Court has routinely approved the payment of pre-petition employees claims for wages, salaries, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization. *See, e.g., In re Café Holdings Corp., et al.,* Case No. 18-05837) (Bankr. D.S.C. Nov. 20, 2018); *In re Merit Group Inc., et al.,* Case No. 11-03216 (HB) (Bankr. D.S.C. May 19, 2011); *In re BI-LO, LLC,* Case No. 09-02140 (HB) (Bankr. D.S.C. March 24, 2009); *In re Georgetown Steel Company, LLC,* Case No. 03-13156 (JW) (Bankr. D.S.C. Oct. 23, 2003).

**A. Payment of the Pre-Petition Employee Obligations Should Be Authorized Under Bankruptcy Code Section 507(a).**

4. Bankruptcy Code sections 507(a)(4) and 507(a)(5) require that certain claims for pre-petition wages, salaries, commissions, vacation, sick and other leave policies, and employee benefit contributions be accorded priority in payment in an amount not to exceed $13,650.00 for each individual. The Debtor believes that it is current on all wage and salary payments owed to employees, and any outstanding payments for vacation, sick and other leave policies, and employee benefit contributions are owed in amounts under the $15,150 cap of Bankruptcy sections 507(a)(4) and 507(a)(5), to the extent such caps are applicable. Accordingly, granting the relief requested will not adversely affect the Debtor's other unsecured creditors. To the extent it is determined that any Employees are owed aggregate amounts in excess of these caps (for items other than base salary), the Debtor submits that payment of the Pre-Petition Employee Obligations in such higher amounts or otherwise non-priority amounts is nonetheless justified in this case, as the Debtor's Employees are extremely important in maintaining the current value of the Debtor's estate. Additionally, the Debtor believes that all Pre-Petition Employee Obligations that exceed the priority cap or are otherwise non-priority have arisen in the ordinary course of the business of the Debtor and are reasonable in relation to the value of the services rendered.

**2. The Proposed Payments Are Appropriate Under Bankruptcy Code Section 363.**

1. Under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. *See* 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). To the extent the payment of pre-petition wage, salary and benefit claims are

deemed to be outside the ordinary course of business, the preservation and protection of a debtor's business, the retention of a debtor's currently working employees and the maintenance of positive employee morale provide a sufficient business justification for such payment. *See id*.

2. The Employees are essential to the continued operation of the Debtor's business. The Debtor believes its enterprise value will be materially impaired by any workforce instability or attrition at this critical juncture. The relief requested in this Motion is, therefore, a necessary and critical element of the Debtor's efforts to preserve value for its stakeholders and is therefore appropriate under Bankruptcy Code section 363.

**3. Payment of Certain of the Pre-Petition Employee Obligations is Appropriate Under Bankruptcy Code Section 541.**

1. Payment of the Employee contribution components of the IRA Plan and other Deductions will not prejudice the Debtor's estate because such withholdings are derived from Employee funds and held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtor's estate under Bankruptcy Code section 541. *See Begier v. IRS*, 496 U.S. 53, 58-59 (1990). *See also In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property which debtor holds in trust – either express or constructive – for another does not become property of the estate when the debtor files for bankruptcy, and stating that "Congress clearly intended the exclusion by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231 (Bankr. D. Del. 2000) (same). Moreover, payments which are critical to the retention and morale of the Debtor's workforce actually add value to the estate because an unplanned reduction in Employee retention or productivity could have disastrous effects on the Debtor's business operations.

**4. Payment of the Pre-Petition Employee Obligations is Authorized under Bankruptcy Code Sections 1184.**

1. The Debtor, operating its business as debtor in possession under Bankruptcy Code sections 1182 and 1184, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

2. According to the *CoServ* court, there are instances in which a debtor in possession can fulfill its fiduciary duty "only … by the preplan satisfaction of a pre-petition claim." *See id.* The *CoServ* court specifically noted that preplan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining whether a preplan payment on account of a pre-petition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

3. Payment of the Pre-Petition Employee Obligations meets each element of the *CoServ* court's standard. Any failure by the Debtor to pay the Pre-Petition Employee Obligations would have a severe negative impact on the morale of the Debtor's Employees at a critical time for the Debtor and its business. Moreover, as described above, the Employees likely

maintain priority claims against the Debtor for the vast majority, if not all, of the Pre-Petition Employee Obligations.

4. Second, the potential harm and economic disadvantage that would stem from the failure to pay the Pre-Petition Employee Obligations is grossly disproportionate to the amount of any pre-petition claim that may be paid. Absent payment of the Pre-Petition Employee Obligations, Employee morale would decrease dramatically, likely leading to the loss of key Employees, lower sales, and other severe business disruptions costing far in excess of the amount of such obligations.

5. Third, there is no practicable alternative to the payment of the pre-petition Employee Obligations or continuation of the Employee Benefit Programs. Unpaid Employees who can seek alternative employment will do so, causing significant disruption of the Debtor's business and forcing the Debtor to incur unnecessary costs and challenges in finding and hiring new employees to replace them. Failure to continue the Employee Benefit Programs will require either that the Debtor either undertake the effort to replace these programs at the outset of the bankruptcy case or deny the Employees the benefits on which they rely, which will have largely the same effect as failing to pay those Employees.

6. Therefore, the Debtor can only meet their fiduciary duties as debtor in possession under Bankruptcy Code sections 1182(2) and 1184 by payment of the Pre-Petition Employee Obligations.

**5. <u>Bankruptcy Code Section 105 and the Doctrine of Necessity Support Payment Of the Pre-Petition Employee Obligations.</u>**

1. Additionally, the Debtor's proposed payment of the Employee Obligations should be authorized under Bankruptcy Code section 105(a) and the "doctrine of necessity." *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992). Under Bankruptcy Code section 105,

this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105.

2. The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain pre-petition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the chapter 11 efforts. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain pre-petition claims, the doctrine of necessity should be invoked to permit payment);[2] *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that debtors may pay pre-petition claims that are essential to continued operation of business) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d at 581).

3. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers' pre-petition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing that the doctrine of necessity is derived from the court's equitable powers and allows debtors to make payment on pre-petition claims to creditors who will refuse to supply services or material essential to the conduct of the debtor's business).

[2] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation … in serious jeopardy").

4. For the reasons discussed herein, it is evident that payment of the Pre-Petition Employee Obligations is necessary to the Debtor's effective chapter 11 process. In particular, without payment of the Pre-Petition Employee Obligations, the Debtor's business and operations will be detrimentally impacted through the reduction in Employee morale and the potential loss of key Employees during a critical time for the Debtor and its business. Hence, this Court should exercise its equitable powers to grant the relief requested in this Motion.

**6. <u>Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers.</u>**

1. The Debtor has sufficient funds on hand to pay the amounts described herein in the ordinary course of business. Also, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment on account of Employee Obligations. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize and direct all applicable financial institutions, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**7. <u>Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived.</u>**

1. Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003. Pursuant to Bankruptcy Rule 6003, a court may grant such relief on an expedited basis if it is necessary to avoid immediate and irreparable harm. The Debtor submits that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and, thus, Bankruptcy Rule 6003 has been satisfied.

2. Additionally, with respect to any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of

the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate. The Debtor thus submits that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

**WHEREFORE**, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the form filed simultaneously with this Motion, granting the relief requested in the Motion on an interim basis and scheduling a hearing to consider the relief requested herein on a final basis and such other and further relief as may be just and proper.

November 6, 2026

**PENN LAW FIRM, LLC**

/s/W. Harrison Penn
W. Harrison Penn (Dist. ID#: 11164)
1517 Laurel St.
Columbia, SC 29201
Tel: (803) 771-8836
Email: hpenn@pennlawsc.com

*Proposed Counsel to the Debtor and Debtor in Possession*